LEVI & KORSINSKY LLP
Adam C. McCall (SBN 302130)
445 South Figueroa Street, 31st Floor
Los Angeles, CA 90071
Tel: (213) 985-7290
Email: amccall@zlk.com
[Additional Counsel Appear on Signature Page]

*Attorneys for Individual and Representative Plaintiff Fabala Sanogo*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FABALA SANOGO, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>SUNRUN INC, LYNN MICHELLE JURICH and ROBERT PATRICK KOMIN JR.,<br><br>Defendants. | Case No. 17-cv-2865<br><br>**COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAW**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Fabala Sanogo ("Plaintiff") alleges the following based upon the investigation of counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Sunrun Inc. ("Sunrun" or the "Company"), as well as regulatory filings and reports, securities analyst reports and advisories by the Company, press releases and other public statements issued by the Company, and media reports about the Company. Plaintiff believes that additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1.  This is a federa1 securities class action on beha1f of all investors who purchased or otherwise acquired Sunrun securities between September 10, 2015, and May 2, 2017, inclusive (the

"Class Period").

2. This action is brought on behalf of the Class for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

3. Sunrun Inc. engages in the design, development, installation, sale, ownership, and maintenance of residential solar energy systems in the United States. The Company markets and sells its products through direct channels, partner channels, mass media, digital media, canvassing, referral, retail, and field marketing.

4. Throughout the Class Period, Defendants made materially false and/or misleading statements, concerning the adequacy of their disclosures on account cancellations by customers who signed up for the home solar energy system.

5. On May 3, 2017, after the truth was revealed to investors, the Company's stock price declined by $0.46 from a closing price $5.21 per share on May 2, 2017, to close at $4.75 per share on May 3, 2017, a drop of approximately 8.83%.

6. As noted in more detail herein, Defendants' statements regarding the adequacy of Sunrun disclosures on account cancellation contained materially false information or omitted information necessary to make those statements not misleading. As a result, Plaintiff and other members of the Class purchased Sunrun securities at artificially inflated prices and thereby suffered significant losses and damages.

**JURISDICTION AND VENUE**

7. The federal law claims asserted herein arise under §§ 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5, as well as under the common law.

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 27 of the Exchange Act, 15 U.S.C. §78aa.

9. This Court has jurisdiction over each Defendant named herein because each Defendant is an individual who has sufficient minimum contacts with this District so as to render the exercise of

jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and § 27 of the Exchange Act because many of the false and misleading statements were made in or issued from this District.

**PARTIES**

11. Plaintiff purchased Sunrun securities as set forth herein and in his certification filed herewith.

12. Sunrun is a corporation incorporated in Delaware with its principal executive offices located at 595 Market Street, 29th Floor, San Francisco, California 94105. Sunrun trades on the NASDAQ under the ticker symbol "RUN."

13. Defendant Lynn Michelle Jurich ("Jurich") was the Chief Executive Officer ("CEO") and director of the Company at all relevant times.

14. Defendant Robert Patrick Komin Jr. ("Komin") was the Chief Financial Officer ("CFO") of the Company at all relevant times.

15. Defendants Jurich and Komin are collectively referred to herein as the "Individual Defendants."

16. Sunrun and the Individual Defendants are collectively referred to as the "Defendants."

**CONTROL PERSON ALLEGATIONS**

17. By reason of the Individual Defendants' positions with the Company as executive officers, the Individual Defendants possessed the power and authority to control the contents of Sunrun's quarterly reports, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, i.e., the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions with the Company, and their access to material, non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the

positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

18. Sunrun is a provider of residential solar electricity focusing on home solar installation and financing and leasing. Sunrun claims to have pioneered the use of solar as a service for residential customers, offering customers either to lease or a purchase agreement whereby homeowners pay for electricity that their solar panels produce but do not have to buy the panels right away. Sunrun is engaged into manufacturing, ownership and maintenance of the solar panels. Sunrun operates through direct and indirect channels.

### Material Misrepresentations and Omissions

19. The Class Period begins on September 10, 2015, when Sunrun issued a press release, also attached as exhibit 99.1 to the Form 8-K filed with the SEC announcing the Company's financial and operating result for the fiscal quarter ended June 30, 2015 ("Q2 2015 Press Release"). In the Q2 2015 Press Release, the Company reported net income available to common stockholders of $7.5 million, compared to a net loss available to common stockholders of $18 million in the previous year's comparable quarter. The Q2 2015 Press Release also stated, in relevant part:

> "2015 has been an exciting year for Sunrun. ***We gained momentum towards our goal of creating the industry's most valuable and satisfied customer base***," said Lynn Jurich, Sunrun's CEO. "***We ended the quarter with approximately 87,000 customers and a 60% increase in our quarterly NPV to $37.2 million***, which we achieved through accelerated reductions in creation costs."

Emphasis added.

20. On September 15, 2015, Sunrun filed a Form 10-Q with the SEC announcing the Company's financial and operating results for the fiscal second quarter ended June 30, 2015 ("Q2 2015 10-Q"), which was signed and certified under the Sarbanes Oxley Act of 2002 by the Individual Defendants. Throughout the Q2 2015 10-Q the Company reapproved the previous statements, and added in relevant part:

> **Operating Activities**
>
> For the six months ended June 30, 2015, we used $44.6 million in net cash in operating activities. *The primary driver of our operating cash inflow consists of payments received from customers*. During the six months ended June 30, 2015, we had an increase in deferred revenue of approximately $20.3 million relating to upfront lease payments received from customers and solar energy system incentive rebate payments received from various state and local utilities. This increase was offset by our operating cash outflows of $67.1 million from our net loss excluding non-cash and non-operating items. Net changes in working capital resulted in an inflow of cash of $2.2 million.

Emphasis added.

21. On November 13, 2015, Sunrun filed a Form 10-Q with the SEC announcing the Company's financial and operating results for the third fiscal quarter and nine-months ended September 30, 2015 ("Q3 2015 10-Q"), which was signed and certified under the Sarbanes Oxley Act of 2002 by the Individual Defendants. For the quarter, Sunrun reported a net loss available to common stockholders of $2.8 million, compared to a net income available to common stockholders of $7.5 million in the previous year's comparable quarter. The Q3 2015 10-Q stated in relevant part:

> **Operating Activities**
>
> For the nine months ended September 30, 2015, we used $71.9 million in net cash in operating activities. *The primary driver of our operating cash inflow consists of payments received from customers.* During the nine months ended September 30, 2015, we had an increase in deferred revenue of approximately $31.9 million relating to upfront lease payments received from customers and solar energy system incentive rebate payments received from various state and local utilities. This increase was offset by our operating cash outflows of $116.0 million from our net loss excluding non-cash and non-operating items. Net changes in working capital resulted in an inflow of cash of $12.2 million.

Emphasis added.

22. On March 11, 2016, Sunrun filed a Form 10-K with the SEC announcing the Company's financial and operating results for the fiscal fourth quarter and fiscal year ended December 31, 2015 ("2015 Form 10-K"), which was signed and certified under the Sarbanes Oxley Act of 2002 by the Individual Defendants. For the quarter, the Company reported a net loss available to common stockholders of $15 million, compared to a net loss available to common stockholders of $2.8 million

in the previous year's comparable quarter. For the year the Company reported a net loss available to common stockholders of $28.2 million, compared to a net loss available to common stockholders of $70.9 million in the previous year. The 2015 Form 10-K stated in pertinent part:

> **Operating Activities**
>
> During 2015, we used $105.3 million in net cash in operating activities. ***The primary driver of our operating cash inflow consists of payments received from customers***. During 2015, we had an increase in deferred revenue of approximately $47.7 million relating to upfront lease payments received from customers and solar energy system incentive rebate payments received from various state and local utilities. This increase was offset by our operating cash outflows of $159.3 million from our net loss excluding non-cash and non-operating items. Net changes in working capital, other than deferred revenue, resulted in an inflow of cash of $6.3 million.

Emphasis added.

23. On May 13, 2016, Sunrun filed a Form 10-Q with the SEC announcing the Company's financial and operating results for the first fiscal quarter ended March 31, 2016 ("Q1 2016 10-Q"), which was signed and certified under the Sarbanes Oxley Act of 2002 by the Individual Defendants. For the quarter, Sunrun reported a net income available to common stockholders of $13.1 million, compared to a net loss available to common stockholders of $18 million the comparable quarter in 2015. The Q1 2016 10-Q stated in relevant part:

> **Operating Activities**
>
> During the three months ended March 31, 2016, we used $77.4 million in net cash in operating activities. ***The primary driver of our operating cash inflow consists of payments received from customers***. During the three months ended March 31, 2016, we had an increase in deferred revenue of approximately $5.6 million relating to upfront lease payments received from customers and solar energy system incentive rebate payments received from various state and local utilities. This increase was offset by our operating cash outflows of $48.5 million from our net loss excluding non-cash and non-operating items. Changes in inventory resulted in a cash outflow of $23.3 million. Changes in working capital, other than deferred revenue and inventory, resulted in an outflow of cash of $11.2 million.

Emphasis added.

24. On August 11, 2016, Sunrun filed a Form 10-Q with the SEC announcing the Company's financial and operating results for the second fiscal quarter ended June 30, 2016 ("Q2 2016

10-Q"), which was signed and certified under the Sarbanes Oxley Act of 2002 by the Individual Defendants. For the quarter, Sunrun reported a net income available to common stockholders of $32.6 million, compared to a net income available to common stockholders of $13.1 million in the previous quarter. The Q2 2016 10-Q stated in relevant part:

> **Operating Activities**
>
> During the six months ended June 30, 2016, we used $98.4 million in net cash in operating activities. ***The driver of our operating cash inflow consists of payments received from customers***. During the six months ended June 30, 2016, we had an increase in deferred revenue of approximately $3.3 million relating to upfront lease payments received from customers and solar energy system incentive rebate payments received from various state and local utilities. This increase was offset by our operating cash outflows of $79.3 million from our net loss excluding non-cash and non-operating items. Changes in inventory resulted in a cash outflow of $16.8 million. Changes in working capital, other than deferred revenue and inventory, resulted in an outflow of cash of $5.6 million.

Emphasis added.

25.    On November 10, 2016, Sunrun filed a Form 10-Q with the SEC announcing the Company's financial and operating results for the third fiscal quarter ended September 30, 2016 ("Q3 2016 10-Q"), which was signed and certified under the Sarbanes Oxley Act of 2002 by the Individual Defendants. For the quarter, Sunrun reported a net income available to common stockholders of $16.9 million, compared to a net income available to common stockholders of $32.6 million in the previous year's comparable quarter. The Q3 2016 10-Q stated in relevant part:

> **Operating Activities**
>
> During the nine months ended September 30, 2016, we used $127.2 million in net cash in operating activities. ***The driver of our operating cash inflow consists of payments received from customers***. During the nine months ended September 30, 2016, we had an increase in deferred revenue of approximately $7.2 million relating to upfront lease payments received from customers and solar energy system incentive rebate payments received from various state and local utilities. This increase was offset by our operating cash outflows of $109.7 million from our net loss excluding non-cash and non-operating items. Changes in inventory resulted in a cash outflow of $14.6 million. Changes in working capital, other than deferred revenue and inventory, resulted in a cash outflow of $10.1 million.

Emphasis added.

26. On March 8, 2017, Sunrun filed a Form 10-K with the SEC announcing the Company's financial and operating results for the fiscal fourth quarter and fiscal year ended December 31, 2016 ("2016 Form 10-K"), which was signed and certified under the Sarbanes Oxley Act of 2002 by the Individual Defendants. For the quarter, the Company reported a net income available to common stockholders of $29 million, compared to a net income available to common stockholders of $15 million in the previous year's comparable quarter. For the year, the Company reported a net income available to common stockholders of $91.7 million, compared to a net loss available to common stockholders of $53.1 million in the previous year. The 2016 10-K stated in pertinent part:

> **Operating Activities**
>
> During 2016, we used $150.5 million in net cash in operating activities. ***The driver of our operating cash inflow consists of payments received from customers***. During 2016, we had an increase in deferred revenue of approximately $10.3 million relating to upfront lease payments received from customers and solar energy system incentive rebate payments received from various state and local utilities. This increase was offset by our operating cash outflows of $132.2 million from our net loss excluding non-cash and non-operating items. Changes in accounts payable resulted in a cash outflow of $40.3 million. Changes in working capital, other than deferred revenue and accounts payable, resulted in a cash inflow of $11.7 million.
>
> During 2015, we used $105.3 million in net cash from operating activities. ***The primary driver of our operating cash inflow consists of payments received from customers***. During 2015, we had an increase in deferred revenue of approximately $47.7 million relating to upfront lease payments received from customers and solar energy system incentive rebate payments received from various state and local utilities. This increase was offset by our operating cash outflows of $159.3 million from our net loss excluding non-cash and non-operating items. Net changes in working capital, other than deferred revenue, resulted in an inflow of cash of $6.3 million.

Emphasis added.

27. The statements in paragraphs 19-27 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Sunrun failed to adequately disclose the number of customers canceling contracts after

signing-up; (2) the Company was engaged in corrupt sales practices; (3) discovery of the foregoing conduct would subject the Company to heightened regulatory scrutiny and potential civil sanctions; (4) as a result of the foregoing, Defendants' statements about its business and operations were materially false and misleading at all relevant times.

## THE TRUTH EMERGES

28. On May 3, 2017, the *Wall Street Journal* published an article entitled "SEC Probes Solar Companies Over Disclosure of Customer Cancellations," reporting that the Company was the subject of a probe initiated by the SEC. The article stated in relevant part:

### SEC Probes Solar Companies Over Disclosure of Customer Cancellations

> Federal regulators are investigating whether solar-energy companies are masking how many customers they are losing, according to a person familiar with the matter.
>
> The Securities and Exchange Commission is examining whether San Francisco based Sunrun Inc. and Elon Musk's San Mateo, Calif.-based SolarCity Corp. have adequately disclosed how many customers have canceled contracts after signing up for a home solar-energy system, the person said.
>
> Investors use that cancellation metric as one way to gauge the companies' health. Companies typically give customers a few days after signing a contract, or even up until the time of installation, to back out of a deal.
>
> Some solar-energy companies have recently disclosed in public filings and earnings calls that increasing numbers of customers are canceling, but the companies have provided few details about the number of cancellations or their impact on the companies' business.
>
> ***The SEC recently issued a subpoena to Sunrun and interviewed current and former employees about the adequacy of its disclosures on account cancellations, said the person familiar with the investigation.*** The SEC is also looking at SolarCity, the person said.
>
> \*   \*   \*
>
> Cancellations grew to be so large at SolarCity that in early 2016, before the company was sold to Tesla, about half of its customers were backing out of contracts before solar panels could be installed, according to people familiar with the matter.
>
> ***At Sunrun, that cancellation figure grew to be as high as 40% earlier this year, according to people familiar with the figure.*** The cancellation rates were especially high

among customers who were approached by salespeople at their doorstep or while they were shopping at big-box stores, these people say.

***The increase in cancellations caused Sunrun to halve its growth expectations in 2016 from 80% to 40%, one of these people said.***

***Most of those figures weren't disclosed to investors. Instead, the companies have provided limited transparency.***

In its annual report in March, Sunrun said, "We have experienced increased customer cancellations in certain markets during 2016." The company does report how many systems it has installed net of cancellations, but it doesn't break out the number of cancellations.

SolarCity said the number of cancellations increased last year, but didn't say by how much.

Company executives, salespeople and homeowners blame the rise in cancellations on what they describe as aggressive sales tactics used by the industry.

Katarzyna Herink, 35, said she listened to a persuasive pitch from a Sunrun salesman at her house in Long Island, New York, last year and considered moving forward with installing solar panels on her roof.

Days later, the company told her she had signed a contract and they were going to start installation, without providing her any details about the cost or showing her the contract, Ms. Herink said.

When she complained, Sunrun told her a document she had initialed on the salesman's iPad during his initial visit constituted the contract, Ms. Herink said.

Ms. Herink immediately canceled the deal.

"We actually wanted to do it, but it was such a scary experience," she said. "Now we've decided to stay away from it."

Emphasis added.

29. On the release of the news, the stock price declined by $0.46 from $5.21 per share of Sunrun stock on May 2, 2017, to a close of $4.75 per share on May 3, 2017, a drop of approximately 8.83%.

## SCIENTER ALLEGATIONS

30. As alleged herein, Defendants acted with scienter in that they knew that the public

documents and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Sunrun, their control over, and/or receipt and/or modification of Sunrun's allegedly materially misleading statements and/or their associations with the Company which made them privy to confidential proprietary information concerning Sunrun, participated in the fraudulent scheme alleged herein.

## LOSS CAUSATION AND ECONOMIC LOSS

31. During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the Company's stock price, and operated as a fraud or deceit on acquirers of the Company's securities. As detailed above, when the truth about Sunrun's misconduct and its lack of operational and financial controls was revealed, the value of the Company's securities declined precipitously as the prior artificial inflation no longer propped up its stock price. The decline in Sunrun's share price was a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market. The timing and magnitude of the common stock price decline negates any inference that the loss suffered by Plaintiff and other members of the Class was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to the Defendants' fraudulent conduct. The economic loss, i.e., damages, suffered by Plaintiff and other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the Company's stock price and the subsequent significant decline in the value of the Company's share, price when Defendants' prior misrepresentations and other fraudulent conduct was revealed.

32. At all relevant times, Defendants' materially false and misleading statements or omissions alleged herein directly or proximately caused the damages suffered by the Plaintiff and other Class members. Those statements were materially false and misleading through their failure to disclose a true and accurate picture of Sunrun's business, operations and financial condition, as alleged herein. Throughout the Class Period, Defendants publicly issued materially false and misleading statements

and omitted material facts necessary to make Defendants' statements not false or misleading, causing Sunrun's securities to be artificially inflated. Plaintiff and other Class members purchased Sunrun's securities at those artificially inflated prices, causing them to suffer the damages complained of herein.

## PRESUMPTION OF RELIANCE; FRAUD-ON-THE-MARKET

33. At all relevant times, the market for Sunrun securities was an efficient market for the following reasons, among others:

a) Sunrun securities met the requirements for listing, and were listed and actively traded on the NASDAQ, a highly efficient market;

b) During the Class Period, Sunrun securities were actively traded, demonstrating a strong presumption of an efficient market;

c) As a regulated issuer, Sunrun filed with the SEC periodic public reports during the Class Period;

d) Sunrun regularly communicated with public investors via established market communication mechanisms;

e) Sunrun was followed by securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of brokerage firms during the Class Period. Each of these reports was publicly available and entered the public marketplace; and

f) Unexpected material news about Sunrun was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

34. As a result of the foregoing, the market for Sunrun securities promptly digested current information regarding Sunrun from all publicly available sources and reflected such information in Sunrun's stock price. Under these circumstances, all purchasers of Sunrun securities during the Class Period suffered similar injury through their purchase of Sunrun's securities at artificially inflated prices, and a presumption of reliance applies.

35. Alternatively, reliance need not be proven in this action because the action involves omissions and deficient disclosures. Positive proof of reliance is not a prerequisite to recovery pursuant

to ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security. Here, the facts withheld are material because an investor would have considered the Company's true net losses and adequacy of internal controls over financial reporting when deciding whether to purchase and/or sell stock in Sunrun.

## NO SAFE HARBOR; INAPPLICABILITY OF BESPEAKS CAUTION DOCTRINE

36.   The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the material misrepresentations and omissions alleged in this Complaint.

37.   To the extent certain of the statements alleged to be misleading or inaccurate may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

38.   Defendants are also liable for any false or misleading "forward-looking statements" pleaded because, at the time each "forward-looking statement" was made, the speaker knew the "forward-looking statement" was false or misleading and the "forward-looking statement" was authorized and/or approved by an executive officer of Sunrun who knew that the "forward-looking statement" was false. Alternatively, none of the historic or present-tense statements made by the defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by the defendants expressly related to or stated to be dependent on those historic or present-tense statements when made.

## CLASS ACTION ALLEGATIONS

39.   Plaintiff brings this action on behalf of all individuals and entities who purchased or otherwise acquired Sunrun securities on the public market during the Class Period, and were damaged,

excluding the Company, the defendants and each of their immediate family members, legal representatives, heirs, successors or assigns, and any entity in which any of the defendants have or had a controlling interest (the "Class").

40. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Sunrun securities were actively traded on NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Sunrun or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions. As of March 6, 2017, Sunrun had 104,639,279 outstanding shares of common stock. Upon information and belief, these shares are held by thousands if not millions of individuals located geographically throughout the country and possibly the world. Joinder would be highly impracticable.

41. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by the defendants' respective wrongful conduct in violation of the federal laws complained of herein.

42. Plaintiff has and will continue to fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

43. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    a) whether the federal securities laws were violated by the defendants' respective acts as alleged herein;

    b) whether the defendants acted knowingly or with deliberate recklessness in issuing false and misleading financial statements;

    c) whether the price of Sunrun securities during the Class Period was artificially

inflated because of the defendants' conduct complained of herein; and

d) whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

44. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## COUNT I

*Violation of Section 10(b) and Rule 10b-5 Against All Defendants*

45. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

46. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase Sunrun securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, each of the Defendants took the actions set forth herein.

47. Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Sunrun securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

48. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future

prospects of Sunrun as specified herein.

49. These Defendants employed devices, schemes, and artifices to defraud while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Sunrun's value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Sunrun and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of Sunrun securities during the Class Period.

50. Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) Individual Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) each Individual Defendant, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's financial condition; (3) each Individual Defendant enjoyed significant personal contact and familiarity with the other Individual Defendant and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (4) each Individual Defendant was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

51. Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Sunrun's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants'

overstatements and misstatements of the Company's financial condition throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

52.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Sunrun's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of Sunrun's publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Sunrun's securities during the Class Period at artificially high prices and were or will be damaged thereby.

53.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding Sunrun's financial results, which was not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Sunrun securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

54.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

55.     As a direct and proximate result of Defendants' wrongful conduct, Lead Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

56.     This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

# COUNT II

*The Individual Defendants Violated Section 20(a) of the Exchange Act*

57. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

58. Jurich and Komin acted as controlling persons of Sunrun within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, agency, ownership and contractual rights, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Jurich and Komin had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading. Jurich and Komin were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

59. In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

60. As set forth above, Sunrun, Jurich and Komin each violated Section 10(b), and Rule 10b-5 promulgated thereunder, by their acts and omissions as alleged in this Complaint.

61. By virtue of their positions as controlling persons, Jurich and Komin are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

62. This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of securities giving rise to the cause of action.

**PRAYER FOR RELIEF**

63. WHEREFORE, Plaintiff prays for relief and judgment as follows:

    a) Determining that this action is a proper class action, certifying Plaintiff as class representative under Federal Rule of Civil Procedure 23 and Plaintiff's counsel as class counsel;

    b) Awarding compensatory damages in favor of Plaintiff and the other members of the Class against all Defendants, jointly and severally, for all damages sustained as a result of the defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

    c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

    d) Granting extraordinary equitable and/or injunctive relief as permitted by law; and

    e) Such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a jury trial.

DATED: May 18, 2017                    Respectfully submitted,

**LEVI & KORSINSKY LLP**

/s/ Adam C. McCall_____
Adam C. McCall
445 South Figueroa Street, 31st Floor
Los Angeles, CA 90071
Tel: (213) 985-7290
Email: amccall@zlk.com

-and-

Nicholas I. Porritt
Adam M. Apton
**LEVI & KORSINSKY LLP**
1101 30th Street NW, Suite 115
Washington, DC 20007

Tel: (202) 524-4290
Fax: (202) 333-2121
*(pro hac vice to submitted)*

*Attorneys for Plaintiff and Proposed Lead Counsel for the Class*